**<u>*NOT FOR PUBLICATION*</u>**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TRACEY M. CANSLER, CRYSTAL CANSLER, CALVON SIMMONS, and PRINCE SIMMONS, | |
| Plaintiffs, | Civil Action No. 19-16540 (FLW) |
| v. | **OPINION** |
| KONDAUR CAPITAL CORPORATION, SETERUS LLC, SPECIALIZED SERVICING, McCABE WEISBERG AND COMPANY, OCWEN LOAN SERVICING, WARREN JONES, ESQ., PROBER & RAPHAEL, ROGELIO SORIA, and HONORABLE KATIE A. GUMMER, | |
| Defendants. | |

**<u>WOLFSON, Chief Judge</u>:**

*Pro se* Plaintiffs Tracey M. Cansler ("Tracey"), Crystal Cansler ("Crystal"), Calvon Simmons ("Calvon"), and Prince Simmons ("Prince"), allege that Defendants Kondaur Capital Corporation ("Kondaur Capital"), Seterus, Inc. ("Seterus"),[1] Specialized Servicing ("Specialized Servicing"), McCabe Weisberg and Company ("McCabe Weisberg"), Ocwen Loan Servicing ("Ocwen"), Warren Jones, Esq. ("Jones"), Prober & Raphael ("Prober & Raphael"), Rogelio Soria ("Rogelio Soria") violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and Defendant Hon. Katie A. Gummer, J.A.D. ("Judge Gummer") (collectively, "Defendants") violated Plaintiffs' constitutional rights in connection with a foreclosure action in New Jersey state court. Presently, Kondaur Capital, Judge Gummer, Seterus, and Jones (collectively, the "Moving

---

[1] Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") is the successor to Seterus, Inc., which the Court notes was incorrectly plead as Seterus LLC.

Defendants") separately move to dismiss Plaintiffs' First Amended Complaint ("FAC").[2] Specifically, Kondaur Capital and Jones move for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, while Judge Gummer and Seterus argue that dismissal is appropriate under Fed. R. Civ. P. 12(b)(1) based on the *Rooker-Feldman* doctrine. Additionally, Judge Gummer moves to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(1) based on Eleventh Amendment sovereign immunity and absolute immunity grounds.

For the reasons set forth below, the Moving Defendants' Motions to Dismiss are **GRANTED**, because Plaintiffs' RICO claim against all Defendants is barred by New Jersey's entire controversy doctrine and Plaintiffs' constitutional claims against Judge Gummer are barred on immunity grounds. All claims are dismissed with prejudice.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following factual allegations are taken from Plaintiffs' FAC and are accepted as true for the purpose of these motions to dismiss. (ECF No. 4, ("FAC").) The FAC in this matter is hardly a model of clarity, and therefore, the Court strives to accurately construe and summarize the factual allegations.

### A.   Factual Background

Plaintiffs' FAC appears to arise from a foreclosure action in New Jersey state court. Plaintiffs allege that property, once owned by Tracey and located at 93 William Street, Tinton Falls, Monmouth County, New Jersey ("the Property"), was fraudulently foreclosed upon, claiming that "[b]anks can not [sic] own property only people." (*See* FAC at 8.)[3]

---

[2]   The Court notes that Tracey has filed two motions to appoint pro bono counsel (one of which has been misclassified as a motion for a jury trial (ECF Nos. 41 and 46); however, those motions are moot based on the Court's decision, herein, to dismiss the FAC.

[3]   Although the Court does not analyze standing in this decision, the Court questions whether Crystal, Calvon, and Prince have standing to bring suit because the FAC does not allege any nexus between those Plaintiffs and the Property or with each other. *Spokeo, Inc. v. Robins*, 136 S. Ct.

As background, on September 15, 2003, Tracey entered into a loan with IndyMac Bank FSB in the amount of $172,000.00 secured by a mortgage ("Mortgage") on the Property. (*See* Declaration of Francesca A. Arcure, Esq. ("Arcure Decl.") in Support of Seterus' Motion to Dismiss, Exh. A.) The Mortgage was assigned to OneWest Bank FSB ("OneWest"). (Exh. A to Arcure Decl., at ¶ 2a.) On July 12, 2013, OneWest instituted foreclosure proceedings in the Superior Court of New Jersey, Chancery Division, Monmouth County as F-24145-13 ("State Foreclosure Action"). (*See* Docket Report and Complaint, Exh. A and B to Kondaur Capital's Motion to Dismiss.)

On August 5, 2016, Federal National Mortgage Association ("Fannie Mae") substituted into the case as the party-plaintiff. (*See* Kondaur Capital's Motion to Dismiss, Exh. C.) Thereafter, on October 3, 2018, Judge Gummer entered an uncontested Judgment of Foreclosure in favor of Fannie Mae in the amount of $226,808.09. (*See id.*, Exh. D.) Following the court's subsequent denial of Tracey's motion for a stay, the Property was sold at sheriff's sale on November 12, 2019. (*See id.*, Exh. E and F.) A writ of execution was entered on December 11, 2019, and the sheriff's deed dated November 15, 2019, was recorded by the Monmouth County Clerk on December 12, 2019. (*See id.*, Exh. F and G.)

**B.   Procedural History**

On August 9, 2019, Plaintiffs filed a Complaint in this Court. Two weeks later, on August 22, 2019, the Court granted Plaintiffs' application to proceed *in forma pauperis*, but dismissed the Complaint without prejudice because it was improperly filed as an interpleader action. (*See* ECF No. 3.) Moreover, the Court explained that although Plaintiffs assert "violations of 'article 6,

_____

1540, 1547 (2016) (finding that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.")

clause 2' of the U.S. Constitution, 'Mail and wire fraud,' 'RICO laws, Sect 1983 and Bivens law,' the Complaint is "devoid of any facts in support of these constitutional and statutory claims."  (*Id.*) The Court provided Plaintiffs with twenty days to file an amended complaint, and on September 3, 2019, Plaintiffs filed the FAC.  Specifically, the FAC alleges that in or around September 2003, "a scheme was designed to trick […] poor neighborhoods [and] working class people, especially black neighborhoods into signing contracts reconveying ownership of [] property through fraudulent concealment contracts…." (FAC at 10.) The "trick," which Plaintiffs characterize as a "money profit Ponzi scheme," was purportedly implemented to cause low income residents to refinance their properties, even after the properties were paid through promissory notes.  (*Id.* at 10-11.) In turn, Plaintiffs allege that mortgagee banks would "steal the people's homes like they did in South Africa Apartheid." (*Id.* at 11.)  Plaintiffs further claim that they are "holder[s] in due recourse to [the Property]."  (*Id.* at 8.) They allege that unspecified defendants' "claims are fraudulent, failure to disclosed [sic] information, illegal conversion of the property, trying to steal property using deceit and trickery, using an attorney's license to walk in a court of law, using proceeds from people homes for County Courts [sic] trust fund." (Id. at 8.) Finally, Plaintiffs assert that Judge Gummer violated their due process and equal protection rights during the State Foreclosure Action because she permitted "the sheriff to come and [] evict [Tracey] from [her] home unlawfully."  (*Id.* at 3, 11-12.)

## II.   LEGAL STANDARDS

### A.   Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(1) provides for the dismissal of a proceeding for lack of subject-matter jurisdiction, including lack of jurisdiction due to Eleventh Amendment immunity. As the Court of Appeals for the Third Circuit has explained "the Eleventh Amendment is a jurisdictional

bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100, 1 (1984)).  Once a Rule 12(b)(1) challenge is raised, the plaintiff bears the burden of demonstrating the existence of subject matter jurisdiction.  *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006).  A Rule 12(b)(1) motion to dismiss is treated as either a "facial or factual challenge to the court's subject matter jurisdiction." *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  Under a facial attack, such as here, the movant challenges the legal sufficiency of the claim, and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Id.*

### B.    Fed. R. Civ. P. 12(b)(6)

Courts undertake a three-part analysis when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original).  Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted).  In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[M]ere restatements of the elements of [a] claim[ ] ... are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show

that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556

U.S. at 679).  "The defendant bears the burden of showing that no claim has been presented."

*Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

"Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a

motion to dismiss for failure to state a claim ... and a court's consideration of matters outside the

pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*,

No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014).  "[A]n exception to the general

rule is that a document integral to or explicitly relied upon in the complaint may be considered

without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat*

*Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (internal quotation

marks omitted).  Notwithstanding these principles, courts may not consider allegations raised for

the first time in a plaintiff's opposition to a motion to dismiss.  *See Pennsylvania ex rel Zimmerman*

*v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be

amended by the briefs in opposition to a motion to dismiss.").

Finally, because Plaintiffs filed their First Amended Complaint *pro se*, I construe it

liberally and in the interests of doing substantial justice.  *See, e.g., Higgs v. AG of the United States*,

655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings

is well-established."); *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe

complaints so as to do substantial justice, keeping in mind that pro se complaints in particular

should be construed liberally."); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d. Cir. 2003)

("apply[ing] the applicable law, irrespective of whether the *pro se* litigant has mentioned it by

name," on a motion to dismiss) (citations omitted).  Even so, I am not required to credit "bald

assertions" or "legal conclusions" simply because Plaintiffs are proceeding *pro se*.  *See Morse v.*

*Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  A *pro se* complaint may just as readily be dismissed if it sets forth allegations which cannot be construed to supply facts supporting a claim for relief.  *See Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981); *Grohs v. Yatauro*, 984 F. Supp. 3d 273, 282 (D.N.J. 2013).

## III.   DISCUSSION

At the outset, I note that Plaintiffs' FAC impermissibly lumps all Defendants together without specifying which claims are asserted against which defendant.[4]  Putting that aside, in the interest of completeness, the Court construes the FAC to assert causes of action for purported violation(s) of Plaintiffs' due process and Equal Protection rights under the U.S. Constitution pursuant to Section 1983 against Judge Gummer and a RICO claim against Kondaur Capital, Seterus, Specialized Servicing, McCabe Weisberg, Ocwen, Jones, Prober & Raphael Prober & Raphael, and Rogelio Soria.[5]  I will address these claims, in turn.

---

[4]   As the FAC lumps all Defendants together without setting forth what each particular defendant is alleged to have done, those allegations constitute impermissible group pleadings and are insufficient to survive a motion to dismiss. *See Branch v. Christie*, No. 16-2467, 2018 WL 337751, at *3 (D.N.J. Jan. 8, 2018) ("When a number of different defendants are named in a complaint, plaintiff cannot refer to all defendants who occupied different positions and presumably had distinct roles in the alleged misconduct without specifying which [d]efendants engaged in what wrongful conduct." (alteration in original) (internal quotation marks and citation omitted)).

[5]   Although the FAC also purportedly asserts a claim for "mail and wire fraud," which the Court construes as being asserted under 18 U.S.C. § 1341 and 18 U.S.C. § 1343, I note that this is not a proper standalone cause of action.  *See Jones v. TD Bank*, 468 Fed. Appx. 93, 94 (3d Cir.2012) ("To the extent that Jones attempted to sue under the Federal Mail Fraud statute, 18 U.S.C. § 1341, he lacked a private right of action to do so."); *Addlespurger v. Corbet*t, 461 F. Appx. 82 (3d Cir.2012) ("[T]here is no private cause of action for a violation of the federal mail and wire fraud statutes"); *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 409 (8th Cir.1999) (same).  Rather, courts have found RICO claims to be predicated on mail and wire fraud. *Hlista v. Safeguard Properties, LLC*, 649 F. App'x 217, 222 (3d Cir. 2016) (affirming dismissal of a RICO claim where the plaintiff failed to allege predicate acts of mail and wire fraud with sufficient particularity); *see also A-Valey Engineers, Inc. v. Bd. of Chosen Freeholders of Cty. of Camden*, 106 F. Supp. 2d 711, 715 (D.N.J. 2000) (noting that the RICO statute "lists a number of state law crimes and federal offenses, including mail and wire fraud, which can constitute

A. **Constitutional Claims Asserted Against Judge Gummer**

i. *Eleventh Amendment Sovereign Immunity*

First, Judge Gummer asserts that she is entitled to Eleventh Amendment sovereign immunity, thus this Court lacks subject matter jurisdiction over Plaintiffs' claims against her. State sovereign immunity under the Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Wright v. N.J. Dep't of Educ.*, 115 F. Supp. 3d 490, 494 (D.N.J. 2015). "A state is generally entitled to immunity in federal court from suits by private parties, including their own citizens. This protection from suit extends to state agencies as well as state officials sued in their official capacities for monetary damages." *A.W. v. Jersey City Pub. Sch.*, 341 F.3d 234, 238 (3d Cir. 2003). Sovereign immunity applies even if the state is not a named party to the action, "'as long as the state is the real party in interest.'" *Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999) (quoting *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989). Thus, a plaintiff may not evade or circumvent a defendant's assertion of sovereign immunity by purposefully omitting the state as a formal party to a complaint. *Chisolm v. McManimon*, 275 F.3d 315, 322-23 (3d Cir. 2001).

In *Fitchik*, the Third Circuit explained that the state is a party-in-interest when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act." 873 F.2d at 659. In other words, sovereign immunity is appropriate if the named defendant is essentially an "arm of the state." *Davis v. Lakewood*, No. 03-1025, 2005 WL 1863665, at *3 (D.N.J. Aug. 4, 2005) (citing *Chisolm*, 275 F.3d at 323). Generally, under the

---

'predicate acts' forming a pattern of racketeering activity."). Thus, the Court dismisses Plaintiffs' independent claims for "mail and wire fraud" against Defendants.

*Fitchik* test, it is well-established that "state courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and therefore considered 'arms' of the state." *Dongon v. Banar*, 363 Fed. Appx. 153, 156 (3d Cir. 2010) (citing *Johnson v. New Jersey*, 869 F.Supp. 289, 298 (D.N.J. 2001).  There are only three exceptions to Eleventh Amendment immunity: "(1) abrogation by an Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law." *M.A. ex rel. E.S. v. State-Operated Sch. Dist.*, 344 F.3d 335, 345 (3d Cir. 2003).

However, Eleventh Amendment immunity does not bar suits against state officials sued in their individual capacity.  *See Hafer v. Melo*, 502 U.S. 21, 26 (1991) (holding state officials sued in their individual capacity are "persons" for purposes of Section 1983); *Walker v. Beard*, 244 Fed. Appx. 439, 440 (3d Cir. 2007).  Because damage remedies from a state official acting in his or her individual capacity would come from that individual's personal assets, the state would not be the real party of interest.  *Id.*  Accordingly, the question is not whether a state official acted in an official or individual capacity, but in which capacity the plaintiff brings suit against the state official. *Hafer*, 502 U.S. at 26-27. Finally, a plaintiff may sue a state official, individually, for a constitutional violation under the legal fiction of *Ex parte Young*, so long as he or she seek prospective injunctive or declaratory relief.  *Ex parte Young*, 209 U.S. 123, 159-60 (1908), *See Alden v. Maine*, 527 U.S. 706, 757 (1999).  In order to do so, however, the claim must be against a state official for ongoing violations of federal law. *Wheeling & Lake Erie R. Co. v. Pub. Util. Comm'n of Com. of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998).

Here, Plaintiffs sue Judge Gummer in both her official and individual capacities.   In that regard, the claims brought against Judge Gummer in her official capacity are barred under the

Eleventh Amendment, because Judge Gummer is part of the judicial branch of the State of New Jersey, and therefore considered an "arm" of the state. *See Fidanzato v. Somerset, Hunterdon, & Warren Ctys. Vicinage 13*, No. 11-5132, 2012 WL 4508008, at *6 (D.N.J. Sept. 28, 2012).

None of the exceptions to Eleventh Amendment immunity apply here. First, Eleventh Amendment immunity has not been abrogated by Congress with respect to Section 1983 suits against the States. *Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States."). Moreover, it is well-established that "[t]he State of New Jersey has not waived its sovereign immunity with respect to § 1983 claims in federal court." *Mierzwa v. United States*, 282 Fed. Appx. 973, 976 (3d Cir. 2008). Finally, Plaintiffs are not seeking prospective injunctive relief against Judge Gummer. Accordingly, to the extent Plaintiffs bring their constitutional claims under Section 1983 claims against Judge Gummer in her official capacity, these federal claims are barred by sovereign immunity.

## ii.   *Judicial Immunity*

Next, Judge Gummer asserts that she is also entitled to judicial immunity from Plaintiffs' claims. I agree with Judge Gummer's position.

Unlike state sovereign immunity under the Eleventh Amendment, absolute judicial immunity applies to all claims, whether official-capacity or individual capacity, that are based on judicial acts. *See Dongon v. Banar*, 363 F. App'x 153, 155 (3d Cir. 2010) ("[J]udges are entitled to absolute immunity from liability based on actions taken in their official judicial capacity.") (citing *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983)). "A judge will not be deprived of immunity

because the action [ ]he took was in error, was done maliciously, or was in excess of [his] authority ....” *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). The immunity is not vitiated by “allegations of malice or corruption of motive.” *Gromek v. Maenza*, 614 F. App’x 42, 45 (3d Cir. 2015) (quoting *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). There are two exceptions to absolute judicial immunity: (1) “a judge is not immune from liability for nonjudicial actions” and (2) “a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.” *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). “Determining whether an act by a judge is a ‘judicial’ one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.” *Gallas*, 211 F.3d at 768–69 (internal citations and quotation marks omitted).

Here, all claims against Judge Gummer stem from judicial actions taken, or omissions made, in connection with the State Foreclosure Action. Regardless of the merits of the decisions or any possible errors, the general nature of the challenged actions relates to typical judicial decision-making. For example, while Plaintiffs allege that Judge Gummer violated their “due process and equal protection rights,” they further allege that Judge Gummer “sign[ed] a writ of execution” and “allowing for the sheriff to come and forced [sic] evict [Tracey] from [her] home unlawfully.” (*See* FAC, at 11-12.) In sum, Plaintiffs’ allegations describe harms allegedly caused by judicial acts or omissions. In fact, the alleged harms arise from independent decisions by Judge Gummer, who ruled against Tracey’s interest in the State Foreclosure Action.[6] Simply, Plaintiffs fail to allege any facts to suggest extrajudicial conduct, and thus, fail to allege the facts necessary

---

[6]    To be clear, Judge Gummer entered an <u>uncontested</u> Judgment of Foreclosure against Tracey in the State Foreclosure Action.

to pierce judicial immunity for civil damages.  *See*, *e.g.*, *Stump*, 435 U.S. at 362.  Thus, Plaintiffs'

claims against Judge Gummer, including those asserted against her in her individual capacity, are

dismissed with prejudice because she is entitled to judicial immunity.

### B.      RICO Claim

#### i.      The Rooker-Feldman Doctrine

The *Rooker-Feldman* doctrine "prevents the lower federal courts from exercising

jurisdiction over cases brought by state-court losers challenging state-court judgments rendered

before the district court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 460 (2006).  It

is implicated when, "in order to grant the federal plaintiff the relief sought, the federal court must

determine that the state court judgment was erroneously entered or must take action that would

render that judgment ineffectual." *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d

834, 840 (3d Cir. 1996).  A federal court lacks subject matter jurisdiction pursuant to *Rooker-*

*Feldman* when "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries

caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit

was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments."

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167-69 (3d Cir. 2010)

(quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005)).

As a threshold matter, the Court finds that the first requirement is met, as Tracey was the

losing party in the State Foreclosure Action, a prior state court action.  (*See* Final Judgment, Exh.

D to Kondaur Capital's Motion to Dismiss.)  Moreover, the third requirement is also met, as

Plaintiffs commenced this action on August 9, 2019, ten months after the final foreclosure

judgment was entered on October 3, 2018.  (*Id.*; *see Damiani v. Wells Fargo*, No. 16-8484, 2018

WL 1731347, at *5 (D.N.J. Apr. 10, 2018) (finding the first and third *Rooker-Feldman*

requirements were satisfied where a final foreclosure judgment in state court action was entered against the plaintiff before he commenced the federal action); *see also Ezell v. JPMorgan Chase Bank Nat'l Ass'n*, No. 18-1407, 2020 WL 525899, at \*4 (D.N.J. Jan. 31, 2020).

Next, the Court turns to the essential and "closely related" second and fourth elements. *Great W. Mining*, 615 F.3d at 166, 168 (noting that "the second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim"). The second element "inquir[es] into the source of the plaintiff's injury." *Id.* at 166. Here, however, I find that *Rooker-Feldman* does not bar Plaintiffs' RICO claim. Relevant here, the Sixth and Ninth Circuit Courts of Appeals have recognized a "fraud exception" to *Rooker-Feldman's* jurisdictional bar, which applies when a litigant alleges that a "state court judgment[ ] [was] procured by ... [the d]efendants through fraud, misrepresentation, or other improper means." *McCormick v. Braverman*, 451 F.3d 382, 392-93 (6th Cir. 2006); *see also Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004). The Sixth and Ninth Circuits have reasoned that, under such circumstances, a plaintiff asserts a claim that is independent of the claims brought in a state court foreclosure proceeding. *Id.* On the other hand, the Second, Fifth, Seventh, Eight, Tenth, and Eleventh Circuits have rejected a "fraud exception" to the *Rooker-Feldman* doctrine. *See Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002); *Williams v. Liberty Mut. Ins. Co.*, No. 04-30768, 2005 WL 776170, at \*2, 2005 U.S. App. LEXIS 5660 at \*4 (5th Cir. 2005); *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 605 (7th Cir. 2008); *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1035-36 (8th Cir. 1999); *Myers v. Wells Fargo Bank, N.A.*, 685 Fed. App'x. 679, 681 (10th Cir. 2017); *Scott v. Frankel*, 606 F. App'x 529, 532 n.4 (11th Cir. 2015).

"Although the Third Circuit has not had the occasion to weigh in on this issue, in multiple nonprecedential, albeit persuasive, opinions, the Third Circuit has permitted a plaintiff to pursue a

claim for damages that arises from a defendant's alleged fraudulent conduct or deceptive practices occurring prior to a state court judgment of foreclosure." *Albert v. Specialized Loan Servicing, LLC*, No. 19-074, 2020 WL 865435, at *5 (D.N.J. Feb. 14, 2020) (citing *Easley v. New Century Mortg. Corp.*, 394 Fed. Appx. 946, 948 (3d Cir. 2010)) (finding that, because the plaintiff's "allegations of fraud and other pre-foreclosure wrongs were not presented to the state court (which granted default judgment)," the "state court's judgment would not be implicated by a finding that [the defendant] was liable under the [applicable consumer fraud statute] for fraud and/or other pre-foreclosure wrongs."); *Gray v. Martinez*, 465 Fed. App'x. 86, 89 (3d Cir. 2012) (holding that the plaintiff "appears to allege that the financial defendants committed fraud by their actions in commencing and executing the foreclosure action ....  All told, while the question is close, we cannot conclude that [the plaintiff's] claims against the financial defendants would require us to directly review the state-court decision."); *Conklin v. Anthou*, 495 Fed. App'x. 257, 262 (3d Cir. 2012) (explaining that a plaintiff is not prevented from otherwise attacking the parties to the foreclosure proceedings or alleging that the methods and evidence employed were the product of fraud or conspiracy ....").

For example, in *Shibles v. Bank of Am., N.A.*, 730 Fed. App'x. 103, 104 (3d Cir. 2018), the Third Circuit found that the *Rooker-Feldman* doctrine did not preclude a plaintiff from alleging a common law fraud claim against a bank which obtained a foreclosure judgment against her in a prior state court proceeding.  In so holding, the Third Circuit reasoned that the plaintiff's claims were based on the bank's alleged deceptive conduct, such that "the source of the injury [was] the defendant's actions," as opposed to the state court foreclosure judgment. *Id.* at 105-06.  Therefore, according to the Third Circuit, the plaintiff asserted a non-barred, independent fraud claim, even if its adjudication would "necessarily entail reviewing the state foreclosure judgment ...." *Id.* at

14

106; *see Conklin*, 495 Fed. Appx. at 262 (holding that a plaintiff can allege a fraud claim, "regardless of whether his success on those claims might call the veracity of the state-court judgments into question.").

Here, Plaintiffs allege that in September 2003, a "scheme was designed to trick" Tracey, as well as other "working class people," especially those residing in "black neighborhoods." Specifically, Plaintiffs allege that this "trick" involved fraudulently inducing members of these communities to "refinance their homes after the homes were already paid for by the promissory note." According to Plaintiffs, the homeowners were unaware of this alleged scheme, which was designed "so that the chain of titles of [the] homeowners would be affected resulting in clouds on title so that the home would not be free and clear resulting in resales of the homes in a money profit Ponzi scheme." Specifically, with respect to Tracey, she alleges that "fraud was perpetrated upon her," when she "affixed her signature to documents on [or] about September 15, 2003."[7] Plaintiffs claim that Tracey was "misled and coerced into signing" these documents, and therefore, by virtue of this fraud, "the contract with Indy Mac Bank now considered to be One West Bank as servicer and Specialized Servicing and Kandaur, Corporation with Proper and Raphel [sic], Esqs. for the bank Now [sic] makes any and all contracts void and non-existent." Indeed, Plaintiffs "object to all documents, Mortgage, Loan Numbers, Dates Statements, and Signatures as fraud." Moreover, and of note, Plaintiffs appear to seek monetary damages in the amount of "over $350,000 plus any payments made presently to Kondaur Corp."[8]

---

[7]     Although the FAC is unclear, the Court presumes the documents referenced by Plaintiffs to be the mortgage documents signed by Tracey in September 2003.

[8]     Importantly, courts have barred similar fraud claims based on the *Rooker-Feldman* doctrine; however, in those actions, the plaintiff sought return of the foreclosed property, not monetary damages.

Because the Court has already determined that the first and third requirements of *Rooker-Feldman* are satisfied here (Tracey lost in state court and the disputed judgment was rendered prior to the initiation of this action), the doctrine's jurisdictional bar is applicable to Plaintiffs' claims if they are "inextricably intertwined" with the Foreclosure Judgment.  To reiterate, this standard is satisfied when the adjudication of a litigant's claim in federal court will result in either of the following conditions: "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment ...." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005) (citation omitted); *see Lampe v. Lampe*, 665 F.3d 506, 518 n.4 (3d Cir. 2011).  Given this standard, I find that Plaintiffs have asserted an independent cause of action for RICO, not barred by *Rooker-Feldman*, against Kondaur Capital, Seterus, Specialized Servicing, McCabe Weisberg, Ocwen, Jones, Prober & Raphael Prober & Raphael, and Rogelio Soria.

At the outset, the adjudication of Plaintiffs' RICO claim will not disturb the Foreclosure Judgment.  While the state court entered an adverse judgment against Tracey, the factual allegations in support of Plaintiffs' RICO claim, in this case, were not raised during the prior foreclosure proceedings.  Indeed, as noted above, *infra*, the Judgment of Foreclosure was not contested by Tracey, nor anyone else in the State Foreclosure Action.  Therefore, because the alleged conduct which forms the basis of Plaintiffs' claims were not presented during the State Foreclosure Action, the Court can grant their request for damages, if appropriate, without having to determine if the State Court erred in deciding this issue.  *See Shibles*, 730 Fed. Appx. at 106 (finding that the *Rooker-Feldman* doctrine did not preclude the plaintiff's cause of action for fraud, because the state court foreclosure judgment "acquiesced in, or left unpunished," the deceptive conduct which was alleged in the pleadings); *Easley*, 394 Fed. Appx. at 948 (holding that the

*Rooker-Feldman* doctrine was inapplicable to the case, because, among other things, the plaintiff's fraud claim arose from "conduct which was not at issue before the state court ...."); *see also DaCosta v. Wilmington Trust, N.A.*, No. 19-913, 2019 WL 4071785, at \*5-6, 2019 U.S. Dist. LEXIS 147229 at \*14 (N.D.N.Y. Aug. 29, 2019) (Report & Recommendation), adopted at, 2019 WL 5895494, 2019 U.S. Dist. LEXIS 147229 (N.D.N.Y. Nov. 12, 2019) (ruling that the plaintiff's fraud claim for damages, arising from the defendants alleged use of "a forged mortgage, note, and loan modification agreement" in the state court foreclosure proceedings, was "not barred by the *Rooker-Feldman* doctrine.").

Second, the adjudication of Plaintiffs' claims will not negate the Foreclosure Judgment.  In that regard, the Third Circuit has held that, within the context of foreclosure actions, "when the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." *Great W. Mining & Mineral Co.*, 615 F.3d at 167; *see also Shibles*, 730 Fed. Appx. at 105-06.  To be sure, a litigant is not prevented from "otherwise attacking the parties to the foreclosure proceedings or alleging that the methods and evidence employed were the product of fraud or conspiracy, regardless of whether his success on those claims might call the veracity of the state-court judgments into question." *Conklin*, 495 Fed. Appx. at 262.

Here, Plaintiffs' RICO claim arises from alleged fraudulent conduct <u>prior</u> to the State Foreclosure Action.  Thus, they have asserted independent causes of action which they are entitled to pursue, even if its resolution negates a legal conclusion that the state court reached in the previous foreclosure proceedings.  Thus, I find that *Rooker-Feldman*'s jurisdictional bar does not preclude Plaintiffs' RICO claim.  *See Shibles*, 730 Fed. Appx. at 106 ("Although we agree with the District Court that finding in favor of [the plaintiff] here would necessarily entail reviewing

the state foreclosure judgment and acknowledging what might have been a meritorious defense, that is not determinative.").

ii.   *The Entire Controversy Doctrine*

Although an application of the *Rooker-Feldman* doctrine is not appropriate in this action, the principles of *res judicata* and the New Jersey entire controversy doctrine, nonetheless, serve to preclude Plaintiffs' RICO claim. Indeed, "the Third Circuit has explained that these expansive claim preclusion devices can prohibit a litigant from asserting a cause of action that would otherwise survive the *Rooker-Feldman* doctrine's jurisdictional bar." *Specialized Loan Servicing, LLC*, No. 19-074, 2020 WL 865435, at *7 (citing *See Ayres-Fountain v. E. Sav. Bank*, 153 Fed. Appx. 91, 93 (3d Cir. 2005)) ("[E]ven if review of the complaint were not barred by *Rooker-Feldman*, we agree with the District Court that [the plaintiff's] claims were barred by *res judicata*.").

Whether *res judicata* applies, namely whether a state court judgment should have a preclusive effect in a subsequent federal action, depends on the law of the state that adjudicated the original action. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."); *see also Allen v. McCurry*, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."). "Both New Jersey and federal law apply *res judicata* or claim preclusion when three circumstances are present: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (citations omitted). Moreover, the doctrine "bars not only claims that were brought in a

previous action, but also claims that could have been brought." *Id.* (citing *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007)).

New Jersey, under the entire controversy doctrine, imposes a "stricter claim preclusion device," separate and apart from, but closely related to, the principles of *res judicata*. See *Specialized Loan Servicing, LLC*, No. 19-074, 2020 WL 865435, at *8. In fact, the Third Circuit has described the doctrine as "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 229 n.130 (3d Cir. 2016) (quotations and citation omitted); *see also Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015). More specifically, the doctrine "requires a party to bring in one action all affirmative claims that [it] might have against another party, including counterclaims and cross-claims, and to join in that action all parties with a material interest in the controversy, or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (quotations and citation omitted) (alteration in original); *see* N.J. Ct. R. 4:30A ("Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine ...").

In the foreclosure context, the New Jersey entire controversy doctrine does not bar a subsequent claim unless it is germane. *See* N.J. Ct. R. 4:64-5. A claim is "considered to be germane to a foreclosure action if [it] arise[s] out of the mortgage that is the basis of the foreclosure action." *Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp.*, 446 Fed. Appx. 469, 472 (3d Cir. 2011); *Leisure Tech.-Ne., Inc. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 458, 349 A.2d 96 (App. Div. 1975) ("The use of the word 'germane' in the language of the rule

undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action."); *In re Mullarkey*, 536 F.3d at 229-30 ("Germane claims are those arising out of the mortgage transaction which is the subject matter of the foreclosure action ...."). Moreover, courts in this district have explained that "any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure could be raised as an equitable defense in the foreclosure." *Zebrowski v. Wells Fargo Bank, N.A.*, No. 07-5236, 2010 WL 2595237, at *6, 2010 U.S. Dist. LEXIS 61196 at *6 (D.N.J. Jun. 21, 2010) (quotation marks and citation omitted).

In the instant action, the New Jersey entire controversy doctrine precludes Plaintiffs' RICO claim. First, I note that the foreclosure proceedings in state court constitute "a previous state-court action involving the same transaction," *i.e.*, the assignment of the mortgage, the default, and the foreclosure itself. *Bennun v. Rutgers State University*, 941 F.2d 154, 163 (3d Cir. 1991). Moreover, and of significance here, Plaintiffs' RICO claim arises from the mortgage transaction which formed the basis of the prior foreclosure proceedings. As stated above, in support of the claim, Plaintiffs allege that Tracey was "misled and coerced into signing" the mortgage documents. Indeed, Plaintiffs appear to question the validity of the mortgage documents all together, asserting that neither the "original promissory note [n]or mortgage" was presented in the State Foreclosure Action. As such, it is beyond dispute that Plaintiffs raise a challenge to the alleged deceptive conduct perpetuated by Kondaur Capital, Seterus, Specialized Servicing, McCabe Weisberg, Ocwen, Jones, Prober & Raphael Prober & Raphael, and Rogelio Soria in securing the Foreclosure

Judgment—a position that constitutes a "germane" defense which should have been raised during the course of the prior foreclosure proceedings in state court.[9]

Indeed, various courts within this district have so ruled. *See Davis v. Kahn*, No. 18-8560, 2019 WL 1789471, at *7, 2019 U.S. Dist. LEXIS 69408 at *17 (D.N.J. Apr. 24, 2019) (finding that, because the plaintiff's "allegations of fraud in connection with the First and Second Assignments arise out of the underlying mortgage transaction," those "claims are germane and would also be barred by the New Jersey entire controversy doctrine ...."); *Pitts v. Bayview Loan Servicing, LLC*, No. 18-633, 2018 WL 6243037, at *5, 2018 U.S. Dist. LEXIS 202218 at *13 (D.N.J. Nov. 29, 2018) (holding that the plaintiffs' "claims sounding in fraud ... are barred by the New Jersey entire controversy doctrine because they could have been raised in the state-court foreclosure action."); *Mason*, 2016 WL 7189828, at *5, 2016 U.S. Dist. LEXIS 171255 at *11-12 (ruling that the plaintiffs' "claims regarding the fraudulent and invalid assignments of the Mortgage were germane to the state court foreclosure action," and therefore, are barred from being asserted in a subsequent action in federal court); *Patetta*, 2010 WL 1931256, at *11, 2010 U.S. Dist. LEXIS 47233 at *37, 2010 WL 1931256 (explaining that the plaintiffs' "claims for fraud ... are each the sort of claims that have been deemed germane by courts ....").

Finally, although Plaintiffs do not argue that the entire controversy doctrine is inapplicable, because Tracey had no knowledge of the alleged "trick" or scheme during the State Foreclosure Action, and therefore, she could not have asserted the instant RICO claim as a defense in that

---

[9]     Although it appears the state foreclosure judgment was obtained through default, that circumstance does not preclude an application of the entire controversy doctrine to this case. *See Mason v. US Bank, NA*, No. 16-1366, 2016 WL 7189828, at *4-5, 2016 U.S. Dist. LEXIS 171255 at *11-12 (D.N.J. Dec. 12, 2016); *Dennis v. Mers/Merscorp Mortg. Elec. Registration Sys., Inc.*, No. 11-4821, 2011 WL 4905711, at *1, 2011 U.S. Dist. LEXIS 118616 at *1-2 (D.N.J. Oct. 13, 2011); *Fraize v. Ginnie Mae*, No. 14-7152, 2016 WL 958392, at *3, 2016 U.S. Dist. LEXIS 32489 at *9 (D.N.J. Mar. 14, 2016).

action, such an argument, if advanced, would lack merit.  Under the New Jersey entire controversy doctrine, a litigant is deemed to have knowledge of a cause of action where "she knows, or should have known, of facts which establish that an injury has occurred and that fault for that injury can be attributed to another." *Maertin v. Armstrong World Indus.*, 241 F. Supp. 2d 434, 456 (D.N.J. 2002) (quoting *Riemer v. St. Clare's Riverside Med. Ctr.*, 300 N.J. Super. 101, 109 (App. Div. 1997)); *see also Napoli v. HSBC Mortg. Servs.*, No. 12-222, 2012 U.S. Dist. LEXIS 121204, at *9 (D.N.J. Aug. 9, 2010); *Mawhinney v. Bennett*, No. 8-3317, 2010 WL 147945, at *10, 2010 U.S. Dist. LEXIS 1715 at *29 (D.N.J. Jan. 11, 2010).

Here, Plaintiffs allege fraud with respect to the foundational mortgage documents in connection with the State Foreclosure Action.  These documents, however, were purportedly executed in September 2003, and the State Foreclosure Action commenced almost ten years later in July 2013.  Further, the Judgment of Foreclosure was not entered until October 2018, and the sheriff's sale in connection with the Property did not occur until November 12, 2019.  It is well-settled, however, that the state court retains jurisdiction over the foreclosure action until either: "(1) if the home is sold at sheriff's sale, the later of ten days after the sheriff's sale or the delivery of the sheriff's deed; or (2) if the sheriff's sale is averted by payoff, until payment is made, the judgment is entered, and the case is dismissed.  *Napoli v. HSBC Mortg. Servs.*, 2012 U.S. Dist. LEXIS 121204 at *11 (D.N.J. 2012) (citing *Hardyston Nat'l Bank of Hamburg, N.J. v. Tartamella*, 56 N.J. 508, 267 A.2d 495, 498 (1970)).  Thus, because the Complaint in this action was filed before the sheriff's sale occurred in the State Foreclosure Action, Tracey was aware of this purported RICO claim, and therefore, it should have been brought before the state court.  Having failed to do so, Plaintiffs cannot, now, advance additional theories of fraud in connection with the state foreclosure proceedings.  *See Shibles, N.A.*, 730 Fed. Appx. at 106-107 (3d Cir. 2018) ("[A]

defendant in a foreclosure case may not fail to diligently pursue a germane defense and then pursue a civil case against the lender alleging fraud by foreclosure.") (quoting *Adelman v. BSI Fin. Servs., Inc.*, 453 N.J. Super. 31 (App. Div. 2018)).  Therefore, I find that Plaintiffs' RICO claim against all Defendants is barred under the New Jersey entire controversy doctrine.[10]

IV.    **CONCLUSION**

For the reasons set forth above, the Moving Defendants' Motions to Dismiss (ECF Nos. 27, 36, 38, and 50) are **GRANTED**, because Plaintiffs' RICO claim is barred by New Jersey's entire controversy doctrine and Plaintiffs' constitutional claims against Judge Gummer are barred on immunity grounds.  Accordingly, the FAC is dismissed with prejudice against all Defendants. Moreover, based on the Court's dismissal of the FAC, Tracey's motions to appoint pro bono counsel (ECF Nos. 41 and 46) are **DENIED** as moot.

Dated: June 11, 2021                                   /s/ Freda L. Wolfson
                                                       Freda L. Wolfson
                                                       U.S. Chief District Judge

---

[10]    In addition, although I need not rule on the arguments advanced in Jones' motion to dismiss based on my finding that Plaintiffs' RICO claim is barred by the entire controversy doctrine, I note that the FAC does not contain any allegations against him, nor does it even reference any actions or omissions committed by Jones in connection with the underlying State Foreclosure Action.